UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gary R. Wall, <br> William Cooksey, <br>     Plaintiffs, <br><br> v. <br><br> Construction and General <br> Laborers' Union, Local 230, <br> John Pezzenti, Dominick Lopreato, <br> and Charles LeConche, <br>     Defendants. | : <br> : <br> : <br> : CIVIL ACTION NO. <br> : 3:97-cv-00942 (JCH) <br> : <br> : January 24, 2006 <br> : <br> : <br> : <br> : <br> : |

**RULING RE:**
**PLAINTIFFS' MOTION FOR A NEW TRIAL [DKT. NO. 342]**

Pro se plaintiffs Gary R. Wall and William Cooksey, Sr. (together "Wall")[1] bring this motion pursuant to Fed.R.Civ.P. 59(a)(1) for a new trial against the defendants, Construction and General Laborers' Union, Local 230, John Pezzenti, Dominick Lopreato, and Charles LeConche (collectively "Local 230" or the "Union"). For the reasons described below, the plaintiffs' motion is DENIED. The plaintiffs' request for a revised judgment is GRANTED.

**I.   FACTUAL BACKGROUND**

Wall originally filed suit against the Union in 1997, asserting a cause of action under Sections 101 and 609 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401 and 529, and several state law claims. Following the Second Circuit's decision in Wall v. Constr. & Gen. Laborers' Union, Local 230, 224 F.3d 168 (2d Cir. 2000), the only claims that remained were the plaintiffs' federal law

---

[1] For simplicity's sake, the court will refer to them collectively as "Wall," unless the circumstance requires their separate identification.

retaliation claims under the LMRDA. Id. at 179. In its August 31, 2004 Ruling on the Union's second motion for summary judgment, this court granted summary judgment in favor of the defendants on two of the factual predicates asserted by the Wall plaintiffs to support their LMRDA retaliation claim, but denied summary judgment on a third predicate. Ruling Re: Defendants' Motion for Summary Judgment, August 31, 2004 [Dkt. No. 265]. In particular, the court found that genuine issues of material fact existed with regard to Wall's standing to bring suit under the LMRDA and the retaliation claim based on denial of Wall's readmission rights, but dismissed Wall's LMRDA claims based on the "pension" and "unsafe work environment" schemes that had been identified in Wall's complaint. Id. at 14-15, 17-18.

A four-day trial was held in November 2005 on Wall's LMRDA claim concerning the right to be readmitted in the Union. Prior to trial, an extensive pre-trial conference was held. During the pre-trial conference, the court granted the Union's motion in limine to preclude mention of the "pension scheme" theory in the plaintiffs' complaint that had been dismissed on summary judgment.

At trial, Wall presented evidence to show that the Union had unlawfully disciplined them under the LMRDA by denying them readmission into the Union. The Union presented evidence to show that Wall had been denied readmission under the "12-month rule," which, according to the Union, bars readmission to membership to former union members who had failed to pay their dues for twelve consecutive months. According to the Union, the 12-month rule existed under the Union's local constitution and had been consistently and fairly applied to Wall.

The existence, and fair application, of the 12-month rule not only tended to

disprove Wall's claim of retaliation, but also resolved the question of Wall's standing to sue under the LMRDA.  The LMRDA only provides a cause of action to union members, which includes anyone who has "fulfilled the requirements of membership."  Phelan v. Local 305 of the Unted Ass'n of Journeymen, 973 F.2d 1050, 1057 (2d Cir. 1992).  In other words, if, as the Union claimed, the 12-month rule existed and was fairly applied to Wall, then Wall was not a member within the meaning of the LMRDA and could not bring suit under it.  Accordingly, the court, in consultation with the parties, prepared a verdict form that began with the following questions:

> 1. Have Mr. Wall and Mr. Cooksey proven by a preponderance of the evidence that the twelve-month limitation on the right to readmission did not exist? . . .
>
> 2. Have Mr. Wall and Mr. Cooksey proven by a preponderance of the evidence that the twelve-month limitation on the right to readmission was not applied consistently and fairly? . . .
>
> If you answered "yes," proceed to question 3.  If you answered "no" to both questions 1 and 2, proceed to the end of the verdict form and have your foreperson sign and date the form.

Jury Verdict [Dkt. No. 340].  After deliberation, the jury returned the verdict form, having answered "no" to both of these questions.  The court subsequently entered judgment in favor of the defendants.

Wall now moves for a new trial, arguing that the verdict form, and the jury's verdict, violated the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1053(b)(3)(D)(i)(II), that Wall suffered prejudice due to the allegedly perjured testimony of a defense witness, that one of Wall's witnesses was intimidated at trial, that defense counsel asked improper questions, and that the court had improper contact with the jury following entry of their verdict.

## II. STANDARD

Rule 59(a) of the Federal Rules of Civil Procedure provides: "[a] new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). "'Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict.'" Caruolo v. John Crane, Inc., 226 F.3d 46, 54 (2d Cir. 2000) (quoting United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998)); see also DLC Mgm't Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir. 1998); Song v. Ives Laboratories, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992). In addition, unlike a motion for judgment as a matter of law, a trial judge considering a motion for a new trial "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." Song, 957 F.2d at 1047 (quoting Bevevino v. Saydjari, 574 F.2d 676, 684 (2d Cir.1978)). However, "'[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" Caruolo, 226 F.3d at 54 (quoting Atkins v. New York City, 143 F.3d 100, 102 (2d Cir. 1998)).

## III. DISCUSSION

At the outset, the court notes that the jury's verdict was supported by evidence produced at trial to demonstrate the consistent application of a 12-month rule. The Union produced the testimony of Union officers and employees, as well as records in the form of letters to union members, demonstrating that the rule existed and had been

applied to members other than Wall and Cooksey. Thus, the court cannot find that the jury reached a "seriously erroneous result." Id. The court will consider Wall's specific arguments in turn to determine whether any constitute grounds for a new trial under Rule 59(a).

### A. The Alleged ERISA Violation

Wall asserts that the jury verdict violates ERISA, specifically a provision of ERISA governing the crediting of service time under pension plans. 29 U.S.C. U.S.C. 1053(b)(3)D)(i)(II) provides that, in computing the period of service under a pension plan for vesting purposes,

> [Y]ears of service with the employer or employers maintaining the plan before any period of consecutive 1-year breaks in service shall not be required to be taken into account if the number of consecutive 1-year breaks in service within such period equals or exceeds the greater of . . . (II) the aggregate number of years of service before such period.

29 U.S.C. § 1059(b)(3)(D)(i)(II). As Wall points out, the Third Circuit has succinctly explained the meaning of this provision:

> The rule of parity provides that an employee will not necessarily sacrifice credited service if rehired after a break in service. Credited service will count toward pension benefits if, on the date of rehire, the employee's years of credited service are longer than the period of layoff, 29 U.S.C. § 1053(b)(3)(D)(i)(II), and the employee works for a full year after rehiring.

Shawley v. Bethlehem Steel Corp., 989 F.2d 652, 656 (2d Cir. 1993).

In their motion, the Wall makes two arguments regarding this ERISA provision. Wall argues that, during Gary Wall's re-direct examination of himself, the court, in a discussion at sidebar, improperly precluded Wall from discussing the "pension issue" with the jury. Pls' Rule 59(a)(1) Motion, p. 2.; Trial Tr., p. 454-456 [Dkt. 347]. Wall argues that, by not being able to discuss their ERISA claims, he could not show that he

-5-

had a statutory right to readmission into the union regardless of the union's 12-month rule. Id. ("The effect of that stoppage was a Federal Jury of eight people Ruled against a Federal Statutory Right . . . ."). Wall also argues that the verdict form violated ERISA, and that the jury violated ERISA by answering "no" to the court's first two verdict form interrogatories regarding the existence of the 12-month rule.

Wall's arguments fail for several reasons. Most importantly, the ERISA provision that Wall has identified does not, contrary to his argument, create either a substantive right to be re-hired by a particular employer or a right to readmission into a union. The provision, by its terms, governs the treatment of pension credits if a person is rehired by an employer following a substantial break in service. The statute does not provide a right to be rehired after a such a break. Thus, even if the plaintiffs had been allowed to bring this provision to the attention of the jury, it would not have tended to prove the non-existence of the 12-month rule. The same is true of the "rule of parity" described in the letter from the Connecticut Laborers' Pension Fund that Wall has included with the new trial motion. Pls' Rule 59(a)(1) Motion, Ex. A. The letter explains the application of the rule of parity if Wall had earned pension credit in 1997; it does not confer a right to work or receive pension credit.

The court also notes that, while it did preclude the use of the letter from the Connecticut Laborers' Pension Fund that has been attached as Exhibit A to Wall's Rule 59(a) Motion because it was hearsay, Trial Tr., p. 456, the court allowed Wall to state his theory to the jury that his right to readmission was contingent on rights concerning

his pension.² Thus, the jury was able to consider Wall's theory about the connection

---

²At the end of Wall's re-direct, the following exchange occurred:
Q:  Mr. Wall, show me why you think you had until 1997 to readmit.
A:  I had until 1997 to readmit because in accordance with the pension plan, I had eight and a half straight years of time. If I did not make the required hours in nine years after which would be the 1997, I will lose my entire pension which I did so. . . .
Q:  So in order to protect my pension, I had the right to readmit until 1997 in accordance with this document. Can I identify this document?
Court:  No, you cannot and you cannot refer to anything about the document.
A:  My entire pension would be lost if I couldn't get the required hours by 1997 which happened and so I take the position.
Mr. Cheverie:  Objection, your Honor.
The Court:  The court is going to strike testimony which happened. All you are testifying to what the basis is for your belief that you had a certain period of time to be readmitted.
A:  I believe because of these pension rules that I had–
Mr. Cheverie:  Objection, your Honor. There is no foundation for this. These are not the rules of the international union or the local.
The Court:  You can cross examine him on that when he's finished. He's answering the question on the basis of belief. . . . .
A:  So if I made nine years because I had eight and a half years, then I lose my entire pension.
Mr. Cheverie:  Objection, your Honor.
The Court:  You are repeating yourself on something I had stricken, sir. You may finish your answer. Go ahead, sir.
A:  So it is my position without a doubt until 1997 to the right to readmission.
Mr: Wall:  I think that's it, your Honor.
The Court:  All right, sir. I want to make a point to the jury, that there's nothing in this case that relates to Mr. Wall's pension, his right to a pension, how much has he earned with a pension, whether he has a pension or not. That's not an issue in this case which was determined by this Court in advance of the trial. I permitted this testimony for the pursose of allowing Mr. Wall evidence as to the basis for his view as to how long he has to readmit as in effect rebuttal to the cross-examination of the defendants about question about the time that you have to readmit

between the plaintiffs' pension rights and the right of readmission into the union.

The court will construe Wall's argument concerning the jury's verdict as an attack on the form and sufficiency of the verdict form since the jury itself could not act in such a way as to violate ERISA. First, the court notes that Wall did not object to the formulation of the verdict form interrogatories at trial. "Absent objection, an error may be pursued . . . only if its is plain error that may result in a miscarriage of justices, or in obvious instances of . . . misapplied law." Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992). There is nothing in the ERISA provision cited by Wall that calls into question the sufficiency of the interrogatories answered in the negative by the jury. Wall's complaint asserted a claim under the LMRDA, not ERISA, and the burden remained on Wall at all times to show that he had standing to bring suit under the LMRDA, i.e., that the plaintiffs had fulfilled the necessary requirements of membership into a union. As noted above, 29 U.S.C. § 1059(b)(3)(D)(i)(II) does not affect the requirements of membership into a union. Therefore, the verdict form interrogatories were appropriate and not incorrect in light of this provision. Accordingly, the court finds that a new trial for the plaintiffs is not warranted on the basis of 29 U.S.C. § 1059(b)(3)(D)(i)(II).

### B.     Testimony of Robert Luskin

Wall argues that one of the defense witnesses committed perjury in his testimony, and, under the standard of Rule 59(a), a new trial is appropriate. However, Wall has not demonstrated to this court that the witness committed perjury and thus

---

. . . .
Trial Tr., p. 466-68.

there is no basis for a new trial due to perjury.

Wall argues that non-party defense witness Robert D. Luskin committed perjury in his testimony on cross-examination regarding investigations by several entities into the activities of the plaintiffs. According to Wall, Luskin falsely testified that "there was never an investigation by his I.G.'s office or the F.B.I. and U.S. Attorney Office, Northern District of Illinois concerning plaintiff Wall and plaintiff Cooksey." Pls' Rule 59(a)(1) Motion, p. 8. In support of his position, Wall has submitted an affidavit from his former attorney, Marc Mercier, in which Mercier attests that, in response to their efforts to rejoin Local 230, Luskin requested that Wall and Cooksey participate in an investigation concerning their alleged status, and that, subsequently, Wall and Cooksey were questioned by Robert E. Lill and Gilbert R. Heitert of the Office of the Inspector General of LIUNA, as well as by Assistant United States Attorneys in the District of Illinois.

At trial, Luskin testified that he serves as the General Executive Board Attorney for the Laborers' International Union of North America ("LIUNA"), which gives him the role of a "chief prosecutor in the internal reform process" in a program that was established in January 1995. Trial Tr., p. 379. He described his position as distinct from that of the inspector general, whom he described as "the chief investigative officer of this internal reform program." Id. Later, on cross-examination, Luskin also described his position as independent of the Department of Justice. See id. at 411.

On direct examination, the following exchange occurred:

Q:  Were either Mr. Cooksey or Mr. Wall ever investigated by your office concerning barred conduct?
A:  No, they were not.

> Q: Why not?
> A: Well, from the time that I assumed office in January of 1995, they were not members of LIUNA. And under the ethics and disciplinary procedure, which defines my authority, I have the ability to prosecute cases against individuals who are officers, members or employees of LIUNA. I don't have the right to bring charges against an individual when that individual is not a member of LIUNA.

Id. at 383. Luskin was not asked on direct examination about investigations by the FBI or the inspector general's office. On cross examination, the following exchanges occurred concerning the relationship between Mr. Luskin's office and the Department of Justice:

> Q: Mr. Luskin, you stated that Mr. Cooksey and I were not involved in an investigation, correct?
> A: That's correct.
> Q: Do you know Special Agent Ernest Luera?
> A: I do.
> Q: Do you know Special Agent Peter Wacks?
> A: I do.
> Q: Do you know United States Attorney Craig Oswald?
> A: He's an Assistant U.S. Attorney, yes, of course, I know him.
> Q: Do you know U.S. Attorney David Hoventure . . . .
> A: I do.
> Q: Did all of these people report to you in your position as general executive of the board attorney?
> A: No, sir. They did not.
> Q: They did not?
> A: No. . . .
> Q: Do you have any information that they came here, investigated Mr. Cooksey and I those four people that I mentioned?
> A: No, I do not.

Trial Tr., p. 409.

> Q: You stated that no one from your office, the Inspector General's Office under the operating agreement came here to investigate Mr. Cooksey and I?
> A: The individuals that you asked me about a minute ago, Mr. Wall, Mr. Wacks, Mr. Leura, Mr. Hoventure and Mr. Oswald, the first two Mr. Wacks and Mr. Leuera were then retired special agents of the FBI. The other two gentlemen were Assistant U.S. Attorneys who

> work for the U.S. Attorney's office in the Northern District of Ilinois. They don't work for me and I don't send them anywhere to do anything.  Under our agreement with the United States, the government is permitted to and sometimes does share information to and sometimes does share information that it develops in the course of its investigations and we, in turn, share information with the government that we develop in our investigations.  But Mr. Gall and I who is the inspector general, conducted our investigations. The government decides when, where and what it will investigate and then the government can but doesn't always share information with us depending upon whether or not they think that it would be useful to us.  But I don't direct their activities in any way and never have.

Id. at 410-11.  The following exchanges also occurred concerning the work of the inspector general's office under the LIUNA operating agreement:

> Q: Did you ever do any investigation in Connecticut here, Mr. Luskin?
> A: I think the inspector general rather than my office spent quite a bit of time investigating things in Connecticut, yes, sir.
> Q: Which inspector general?. . .
> A: I don't remember which particular agents working for the inspector general came to Connecticut, sir.
> Q: Do you have information about Mr. Lill coming to a Local 230 meeting where people stood up and made accusations about me murdering people and shooting out windows of cars and things like that?
> A: No.  Not personally, no.
> Q: Mr. Lill never gave you that information?
> A: He may have, sire, but it was 10 years ago.  I similiarly don't remember what particular reports Mr. Lill may have filed.
> Q: Do you know Mr. Gilbert Heitart?
> A: I know the name.
> Q: You don't know him personally?
> A: I have probably met him but again it's been sometime ago.
> Q: Do you know he worked for the inspector general's office?
> A: I think he did but I'm not certain.  I know at some point he worked for the Department of Labor.  I don't know whether or not he subsequently went to work for the Inspector General.
> Q: Did you have any conversations with my attorney Mr. Marc Mercier about Mr. Heitart or Mr. Lill?
> A: I don't recall them, sir.

Id. at pp. 415-17.

The Second Circuit has stated, in the context of the new trial standard in a criminal case, that "[i]n order to grant a new trial based on newly discovered evidence of trial perjury, the [petitioner] must first demonstrate that the witness in fact committed perjury." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001). See also Ricciuti v. New York City Transit Auth., 70 F.Supp.2d 300, 315 (S.D.N.Y. 1999)(reviewing case law to find that, in civil context, "if plaintiffs are to obtain a new trial on the ground that a defendant committed perjury, they must demonstrate that perjury by clear and convincing proof."). The Supreme Court has defined perjury as the giving of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94(1993). See Riccuti, 70 F.Supp.2d at 314 (applying Dunnigan standard in the context of a civil Rule 59(a) motion).

The plaintiffs have not demonstrated here by clear and convincing evidence that Luskin gave false testimony, let alone testimony that constitutes perjury. First, the court notes that it found Luskin credible. Further, Luskin's testimony denying an investigation of Wall and Cooksey by his office is consistent with his explanation that his office is separate and distinct from the inspector general of LIUNA as well as the Department of Justice. Luskin did not deny that the inspector general's office and the Department of Justice investigated the plaintiffs; he only testified that he did not have information or knowledge about their activities. Thus, Luskin did not testify falsely as to investigations by LIUNA into the activities of the plaintiffs.[3]

---

[3] It bears noting that this line of questioning is not relevant to the issue of the existence of the 12-month rule under the Union's constitution, and thus, even if Luskin's

-12-

### C.  Other Issues Concerning Luskin's Testimony

The plaintiffs raise several other issues in connection with Luskin's testimony in their motion for a new trial. Wall argues that he should have been able to introduce as evidence the business cards of the FBI agents who questioned him and the testimony of a couple of "rebuttal" witnesses in response to Luskin's testimony. According to Wall, the plaintiffs' inability to offer this evidence hurt their ability to rebut the defendants' argument that the plaintiffs did not "exhaust the internal process of the LIUNA/Local 230 Constitution" by failing to submit to an investigation. Pls' Rule 59(a) Motion, p.8. However, the defendants did not make this argument at trial; all evidence concerning any investigation that may have occurred was introduced by the plaintiffs. Similarly, Luskin, in his testimony, did not assert that the plaintiffs were unable to be readmitted into Local 230 because of a failure to submit to an investigation.[4] As Wall and Cooksey's participation in investigations were not at issue at trial, and did not bear

---

testimony were to be construed as perjurious, it does not impugn the jury's verdict. Cf. Monteleone, 257 F.3d at 219(noting, in criminal new trial motion context, that "[w]ether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury.").

[4] As Wall points out, the issue of exhaustion of internal remedies was raised in the Union's first summary judgment motion, and the Second Circuit found, in Wall I, that the statute of limitations for suits under the LMRDA was properly tolled because of, in part, representations that had been made by Luskin in letters written in 1996 about the plaintiffs' ability to be readmitted as members of LIUNA. 224 F.3d at 176-77. The exhaustion issue was not at issue at trial.

Wall also argues that the court improperly prevented Wall from presenting the "findings" of Wall I to the jury. The Second Circuit's description of the facts in Wall I, written in accordance with the presumption in favor of the non-moving party (i.e., Wall) on summary judgment, are not factual findings that are binding on the jury at trial and were thus properly excluded as evidence.

on the existence of a 12-month rule, the evidence was properly excluded as not relevant under Fed.R.Evid. 401. To the extent Wall intended to use this evidence to impeach Luskin's character for truthfulness more generally, the evidence was properly excluded under the extrinsic evidence rule of Fed.R.Evid. 608.

Wall also contends that the plaintiffs were prejudiced by the irregularity of the circumstances surrounding Luskin's testimony. Due to his travel schedule, Luskin testified out of order on the second day of trial, during the plaintiffs' case. The court asked Wall at trial if he had any objection to Luskin testifying out of order to accommodate his schedule, and Wall replied that he did not. Trial Tr., p. 373. While the court notes that it is usual for a witness to enter the courtroom through the door at the back, witnesses do enter by the side door. Luskin used this side entrance, next to the defense table, which is accessible to the public and was used throughout trial by defense counsel. Luskin's entrance certainly did not constitute egregious circumstances warranting a new trial.

### D. Cross-Examination of Wall

Wall argues that a new trial is required because of an improper line of questioning put to him by the Union during its cross-examination of Wall. At the beginning of its cross-examination of Wall on the second day of trial, counsel for the defendants asked Wall whether he engaged in interstate gambling offsite of the construction job and whether, in deposition, Wall had testified about breaking state and federal laws over a 20 year period.[5] Id at 425-27. Wall answered the first question and

---

[5] In his pleadings, Wall recollects that defense counsel also asked Wall about a subpoena regarding evidence in the murder case of an organized crime figure. The

-14-

then raised an objection to the line of questioning.  The court asked Wall if he was requesting that the court strike his answer and Wall replied that he was not.  Id. at 427.  With regards to the second question, the court sustained Wall's objection to it and it was withdrawn by defense counsel.  Id. at 428.  Wall contends that these questions unfairly prejudiced him and were grounds for a mistrial.  However, given that Wall explicitly did not request that his answer be stricken, and given that the line of questioning was abandoned after Wall's objection was sustained, the court finds that these were not so prejudicial to Wall so as to require a new trial under Rule 59(a).  See Pescatore v. Pan American World Airways, Inc., 97 F.3d 1, 17(2d Cir. 1996)(finding that district court abused its discretion in twice itself referring to the defendant's "willful misconduct" and allowing the plaintiff to make several similar references but holding that statements were insufficiently prejudicial where record of two-week trial was considered as a whole); see also Marcic v. Reinauer Trans. Cos., 397 F.3d 120, 125 (2d Cir. 2005)(citing Pestacore).

### E. Testimony of Gene Julian

Wall also moves for a new trial on the basis of alleged "witness tampering." Gene Julian testified on behalf of the Wall plaintiffs on November 2, 2005, during the first day of trial.  Trial Transcript, p. 26-48.  According to Wall, a union steward who had threatened Julian at some point in past was present in the gallery of the courtroom.  In an affidavit submitted with Wall's motion for a new trial, Julian attests that "when I testified in this case, [the union steward] was sitting in the Courtroom glaring at me as I

---

transcript, however, does not contain the question that Wall recollects.  See Trial Tr, p. 425.

testifed." Pls' Rule 59(a)(1) Motion, Ex. C.

Wall contends that the steward's presence in the courtroom was intimidating to Julian. Wall does not contend, however, and Julian does not attest, that Julian's testimony would have been different but for the presence of the union steward in the courtroom, and the steward is not alleged to have had any contact with Julian aside from his presence in their court room. Furthermore, these allegations were not brought to the court's attention during trial. While intimidation of witnesses could present a serious challenge to the integrity of a trial, the court finds that a new trial is not warranted under Rule 59(a) on the basis of the specific factual allegations set forth in Wall's motion.

### F.     The Court's Post-Trial Contact with Jurors

After the jury's verdict was received, and after court was adjourned, the court spoke informally with the jurors about their experience serving on the jury, as is its usual custom. Wall suggests that such contact was improper, citing to Peterson v. Wilson, 141 F.3d 573 (5th Cir. 1998). In that case, however, the trial judge ordered a new trial sua sponte based on information he receive from the jury in a post-verdict, ex parte meeting. Id. at 575. No such action took place here, and my post-trial conversation with jurors could not in any case impugn the integrity of a verdict that had already been received and recorded.  Thus, Wall's motion on this basis is denied.

### G.     Clarification of Judgment

On November 11, 2005, the court entered judgment in favor of the defendants and closed the case. Judgment, 11/09/05 [Dkt. No. 341].  Wall correctly points out that

the judgment should be corrected to address the final disposition of each cause of action in the case.   A revised judgment will issue forthwith.

### III.    CONCLUSION

For the forgoing reasons, Plaintiffs' Rule 59(a)(1) Motion for a New Trial [Dkt. No. 342] is DENIED.  The plaintiffs' request for a new judgment is GRANTED, and the court will issue a revised judgment in accordance with this ruling.

**SO ORDERED**.

Dated Bridgeport, Connecticut this 24th day of January, 2006.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge